UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AVROHAM SHERMAN,

               Plaintiff,

        -against-

THE CITY OF NEW YORK, OFFICER
ANTONIO HERNANDEZ (N.Y.P.D.) SHIELD #23081,
OFFICER CARLYLE JEAN JOSEPH (N.Y.P.D.)
SHIELD #7880, OFFICER NYACA STEWART
(N.Y.P.D.) SHIELD #4903, OFFICER(S) JOHN/JANE
DOE #1-10 (THE NAME(S) JOHN/JANE DOE BEING
FICTICIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN), and JOSHUA
EILENBERG,

               Defendants.
-------------------------------------------------------------------X

Index No.: 18-CV-05359
(ARR)(SJB)

**FIRST AMENDED**
**VERIFIED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

       The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF ANDREW L.

HOFFMAN, P.C., respectfully shows to this Court and alleges:

## INTRODUCTION

1.   This is an action to vindicate the rights of Avroham Sherman, a Brooklyn resident with

     no prior criminal or arrest record, who was wrongfully arrested after an acquaintance,

     Defendant Joshua Eilenberg, falsely reported that Sherman had stolen his cell phone.

2.   In truth, Eilenberg had given the phone to Mr. Sherman as collateral for a $160.00 loan,

     and Mr. Sherman could prove it, as he had made recordings of the two confirming the

     arrangement on his own cell phone.

3.   Nevertheless, shortly after Eilenberg received the money and relinquished custody of the

     phone, he demanded that Mr. Sherman return it, despite not having repaid the loan.  As

Eilenberg put it, "I want my fucking phone back.  I am going to call the cops.  You are going to be in a lot of trouble.  It's going to be VERY ugly for you."

4. When Mr. Sherman refused to succumb to Eilenberg's threats, Eilenberg, who claimed to have an affiliation with the New York City Police Department ("N.Y.P.D."), threatened to use his connections to have Mr. Sherman arrested for a made-up theft.  As Eilenberg stated, "You know I still have connections, a lot of connections to the police.  I make one phone call, you'll be sitting in jail, in central booking."

5. Mr. Sherman dismissed Eilenberg's threat as implausible, confidant that even if Eilenberg followed through, any N.Y.P.D. officer would simply listen to his phone recordings, observe Eilenberg's bizarre demeanor, and see that Eilenberg's account was neither reliable nor truthful.   Unfortunately, Mr. Sherman's confidence was misplaced.

6. Shortly after Eilenberg began making his threats, Mr. Sherman received a 9:43PM phone call while attending a friend's engagement party.  The person on the line was Defendant Officer Antonio Hernandez from the 66th Precinct.  Hernandez stated that Eilenberg was standing right next to him and had just alleged that Sherman had stolen his iphone 7.  Fortunately, Mr. Sherman also recorded this conversation.

7. Hernandez indicated that Eilenberg was "about ready to file a report," actively encouraging Hernandez to act, such that Sherman would be arrested.

8. To that end, Hernandez presented Mr. Sherman with a choice: deliver the phone to the precinct immediately, or face arrest.  As Hernandez put it, "If I have to do this police report that you stole this cell phone, detectives will be coming out to your house…".

2

9. Mr. Sherman explained his loan arrangement with Eilenberg and offered to put the matter to rest by texting or emailing the officer copies of his recordings as proof.  Hernandez declined.

10. When Mr. Sherman asked Hernandez how he was supposed to recover the money he had loaned if he simply returned the phone to Eilenberg without repayment, Hernandez tacitly acknowledged the truth of Sherman's explanation, instructing Sherman to take him to "civil court."  Nevertheless, Hernandez continued to demand that Sherman leave the engagement party immediately and deliver the phone.

11. When Mr. Sherman refused, an exasperated Hernandez finally exclaimed, "Just so you know, you're going to be arrested.  It's that simple.  It's a grand larceny for theft over a cell phone.  You're being ridiculous right now…I can't wait to see your face when you are arrested!"

12. The next day, Mr. Sherman was arrested, "sitting in jail, in central booking"—just as Eilenberg had promised.

13. The individual Defendants in this case are now being sued for their respective roles in the violation of Avroham Sherman's rights.

14. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

**THE PARTIES**

15. At all times relevant, Plaintiff AVROHAM SHERMAN resided in Brooklyn, NY.

16. Upon information and belief, at all times relevant, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

17. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the New York City Police Department, including all the police officers thereof.

18. Upon information and belief, at all times hereinafter mentioned, Defendant officers ANTONIO HERNANDEZ, CARLYLE JEAN JOSEPH, NYACA STEWART and POLICE OFFICER(S) DOE #1-10[1] were employed by the Defendant CITY OF NEW YORK, as members of its police department.

19. Upon information and belief, at all times hereinafter mentioned, all Defendant Police Officers, be they known or unknown, worked out of the 66th precinct in Brooklyn, New York.

20. Upon information and belief, at all times hereinafter mentioned, Defendant JOSHUA EILENBERG resided in Brooklyn, New York, and was, or was not, employed[2] by the New York City Police Department.

---

[1] Plaintiff's diligent search for the identity of all N.Y.P.D. officers involved remains ongoing. Accordingly, the Corporation Counsel remains on notice that the plaintiff intends to name every officer involved as a defendant once their identities are revealed through discovery. All appropriate steps to prepare the officers' defenses and otherwise inform them that they will be individually named should be undertaken forthwith.

[2] Eilenberg once identified himself as a police officer to Mr. Sherman, and showed him a police uniform that appeared authentic, and that Eilenberg claimed had been issued to him by the N.Y.P.D. Yet it is unclear what (if any) part of Eilenberg's claim was true, as he remained vague as to whether he was actively employed, previously employed, a part time deputy, or on some sort of administrative leave from the department. For the purposes of this Complaint, Plaintiff advances alternative theories, as permitted by Rule 8 of the F.R.C.P., with respect to Mr. Eilenberg's status as a "state" or "private" actor. Eilenberg was employed by the N.Y.P.D., and as such, Eilenberg qualifies as a "state" actor for all of Plaintiff's Section 1983 claims. Alternatively,

4

21. The New York City Police Department is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the police chief of the New York City Police Department is responsible for the policies, practices, and customs of the New York City Police Department as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

22. This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, the rights guaranteed by the Constitution, and the laws of the State of New York.

23. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

24. On October 5, 2017, Defendant Joshua Eilenberg called an acquaintance who he had known for several months, Plaintiff Avroham Sherman, and asked to borrow money.  Not fully trusting that Eilenberg would pay him back, Mr. Sherman initially refused.

25. Finally, Eilenberg stated that he would give Mr. Sherman his iPhone 7 as collateral for the loan, and the Claimant agreed, providing Eilenberg with a $160.00 loan.  The sum

---

Eilenberg was not a member of the N.Y.P.D. during the relevant time period, yet still remains liable for all of Plaintiff's state law claims (save for Negligence and Negligent Hiring and Retention), and for Conspiracy under Section 1983.  "[A] private actor [does] act[] under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).

and substance of the transaction, which took place over several telephone calls, was recorded by Mr. Sherman on his own cell phone.

26. Later that same evening, and well into the next day (i.e., October 6, 2017), Eilenberg began to demand that Mr. Sherman return his iPhone 7, despite not being able to repay the loan.

27. Over the course of several conversations, Mr. Sherman proposed alternative forms of collateral that might be substituted for the phone, as well as offering Eilenberg temporary access to the phone to conduct whatever immediate business that he might have. Eilenberg refused.

28. Finally, an enraged Eilenberg began to threaten Mr. Sherman.  As Eilenberg put it, "I want my fucking phone back.  I am going to call the cops.  You are going to be in a lot of trouble.  It's going to be VERY ugly for you."

29. When Mr. Sherman refused to succumb to these threats, Eilenberg, who was, or was not, employed by the New York City Police Department ("N.Y.P.D."), threatened to use his connections to have Mr. Sherman arrested for a made-up theft.  As Eilenberg stated, "You know I still have connections, a lot of connections to the police.  I make one phone call, you'll be sitting in jail, in central booking."

30. Mr. Sherman dismissed Eilenberg's threat as implausible, confidant that even if Eilenberg followed through, any N.Y.P.D. officer would simply listen to his phone recordings, observe Eilenberg's bizarre demeanor, and see that Eilenberg's account was neither reliable nor truthful.   Unfortunately, Mr. Sherman's confidence was misplaced.

31. On October 6, 2017, Mr. Sherman received a 9:43PM phone call while attending a friend's engagement party.  The person on the line was Defendant Officer Antonio

6

Hernandez from the 66th Precinct.  Hernandez stated that "Joshua" was standing right
next to him and had just alleged that Sherman had stolen his iphone 7.  Fortunately, Mr.
Sherman also recorded this conversation.

32. Hernandez indicated that Eilenberg was "about to file a report," actively encouraging
Hernandez to act, such that Sherman would be arrested.

33. To that end, Hernandez presented Mr. Sherman with a choice: deliver the phone to the
precinct immediately, or face arrest.  As Hernandez put it, "If I have to do this police
report that you stole this cell phone, detectives will be coming out to your house…".

34. Mr. Sherman explained the loan arrangement to Hernandez and offered to put the matter
to rest by texting or emailing the officer copies of his recordings as proof.  Hernandez
declined.

35. When Mr. Sherman asked Hernandez how he was supposed to recover the money he had
loaned if he simply returned the phone to Eilenberg without repayment, Hernandez tacitly
acknowledged the truth of Sherman's explanation, instructing Sherman to take Eilenberg
to "civil court."  Nevertheless, Hernandez continued to demand that Sherman leave the
engagement party immediately and deliver the phone to the precinct.

36. When Mr. Sherman refused, an exasperated Hernandez finally exclaimed, "Just so you
know, you're going to be arrested.  It's that simple.  It's a grand larceny for theft over a
cell phone.  You're being ridiculous right now…I can't wait to see your face when you
are arrested!"

37. The next day, on October 7, 2017, shaken by the Hernandez call, and uncertain as to
whether the police were really looking for him, whether he had been subject to a prank,
or whether Hernandez and Eilenberg had conspired together to concoct a phony criminal

case against him to force the surrender of the phone—Mr. Sherman called 911 to report what had happened.

38. Shortly thereafter, at approximately 6:45PM, two police officers, Defendants Carlyle Jean Joseph and Nyaca Stewart, arrived at Mr. Sherman's home, where he was celebrating Sukkot.  Mr. Sherman invited them in.

39. Mr. Sherman proceeded to tell the officers about the loan arrangement with Eilenberg and the phone call that he had received from Hernandez.  When the officers heard the name "Hernandez," the officers' interest abruptly intensified.

40. The officers spent the next several minutes making phone calls, including calls to Hernandez and Eilenberg.  Mr. Sherman heard the officers telling Eilenberg that if he was lying he could get in trouble and asking for multiple reassurances that he was telling the truth.  Eilenberg stood by his story, continuing to urge the officers to act on his false criminal allegations.

41. When that phone call ended, the officers placed Mr. Sherman (who had no prior criminal or arrest record) under arrest.  When Mr. Sherman implored Defendants Carlyle Jean Joseph and Nyaca Stewart to listen to his recordings with Eilenberg, which were readily accessible, and on his person, the officers refused.

42. Defendants Carlyle Jean Joseph and Nyaca Stewart knew that Hernandez and Eilenberg had conspired together to concoct a phony criminal case to force Mr. Sherman into prematurely relinquishing Eilenberg's cell phone.  Yet seeking to protect Hernandez and/or Eilenberg from being found out, they declined to intervene, and effectively joined the conspiracy by arresting Mr. Sherman.

43. Alternatively, Carlyle Jean Joseph and Nyaca Stewart knew that Eilenberg was not credible, and that they lacked probable cause to arrest, but willfully disregarded Mr. Sherman's offer to share his recordings or otherwise intervene, out of deference and/or at the urging of their colleague(s) Hernandez and/or Eilenberg.

44. Upon his arrest, Mr. Sherman was taken to a precinct (upon information and belief, the 66th Precinct), where he continued to ask any officer he saw to listen to his side of the story, indicating that he had demonstrable, readily available, recorded proof that Eilenberg had offered his iPhone 7 as collateral for a loan.  All of the officers refused, stating in sum and substance, that Mr. Sherman should save it for the judge.

45. Mr. Sherman was then taken to central booking where he suffered severe emotional distress as he was made to wait through the night, under horrifying conditions, to see a judge.

46. These conditions included being caged with 15-20 other arrestees in a cell with urine on the floor and feces on the wall, being exposed to a man masturbating at the toilet, being sleep-deprived, being denied Kosher food, and being physically threatened to the point that Sherman felt compelled to stand at the gate nearest the guard for fear of being assaulted or worse.

47. Mr. Sherman was charged with Grand Larceny in the Fourth Degree (an E felony), Petit Larceny, and Criminal Possession of Stolen Property in the Fifth Degree.  After being released on his own recognizance, Mr. Sherman worked diligently with his Legal Aid lawyer, providing copies of all the phone recordings that the Defendants had previously refused to hear.  Thankfully, after producing this evidence to the District Attorney's office, Sherman's case was summarily dismissed at his next court appearance.

48. In a subsequent recorded phone call to Mr. Sherman, Joshua Eilenberg admitted that he had made a "big mistake" with respect to his conduct which led to Mr. Sherman's arrest. He professed his love for Mr. Sherman through tears, acknowledging the severe distress his actions had inflicted on Mr. Sherman, and promising to pay Mr. Sherman whatever it took to make up for the "agony" and "pain" Mr. Sherman had suffered.

49. Eventually Eilenberg arrived at $500.00 as sufficient recompense.  Mr. Sherman declined.

50. Mr. Sherman continues to suffer from the effects of his wrongful arrest and prosecution to this day.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## ALL NAMED DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -False Arrest/Imprisonment-

51. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 50.

52. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials and prohibit law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization.  It also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

53. The actions of the Defendants as stated herein violated Avroham Sherman's rights under Federal law.

10

54. As set forth herein, it is clear that the Defendants lacked any objectively reasonable basis to support a legitimate probable cause arrest, as evidence disproving Eilenberg's claims was readily available at all times relevant.

55. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights Avroham Sherman.

56. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken by New York City police officers under color of state law.

57. As a direct and proximate result of the unconscionable acts described above, Plaintiff Avroham Sherman has been substantially injured.


### AS AND FOR THE SECOND CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### ALL NAMED DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-Malicious Prosecution-**

58. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 57.

59. The Fourth Amendment of the United States Constitution protects citizens from malicious prosecution by government officials without probable cause.

60. Avroham Sherman was prosecuted, without probable cause, relative to the patently and demonstrably false allegations of a totally unreliable Complainant, and/or Complaining officer, Defendant Joshua Eilenberg, which led to his October 7, 2017 arrest.

61. The false and malicious charges resulted in a loss of liberty for Mr. Sherman, as he was incarcerated and forced to fight said charges, incurring substantial costs as a direct result.

62. The case against Mr. Sherman was unambiguously terminated in his favor.

63. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Sherman.

64. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

65. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Avroham Sherman has been substantially injured.


**<u>AS AND FOR THE THIRD CAUSE OF ACTION</u>**
**<u>ON BEHALF OF PLAINTIFF AGAINST AGAINST</u>**
**<u>ALL NAMED DEFENDANTS</u>**

**Violation of Constitutional Rights Under Color of State Law**
**-Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-**

66. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 65.

67. Defendant police officers created and/or ratified false evidence of a theft against the Plaintiff, knowing it was false, as herein described.

68. Defendant officers forwarded said false and material evidence and false information to prosecutors in the Kings County District Attorney's office.

69. Defendants misled the judge and the prosecutors by creating and/or ratifying false evidence against the Plaintiff.

70. In creating and/or ratifying false evidence against Plaintiff, in forwarding false evidence and information to prosecutors, Defendants violated Plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

12

71. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

72. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Avroham Sherman has been substantially injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## ALL NAMED DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-Malicious Abuse of Process-**

73. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 72.

74. Defendants issued legal process against the Plaintiff.

75. Defendants issued legal process against the Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process: namely, to wrongfully restore custody of the cell phone in question to Joshua Eilenberg, to retaliate for Mr. Sherman's refusal to immediately leave a party at 9:45PM in order to surrender a cell phone which officers knew, or had reason to know, was in his rightful custody, to retaliate for having to complete arrest paperwork that they preferred not to do, and to assist colleagues in avoiding potential disciplinary problems for initiating a fabricated criminal case against the Plaintiff.

76. Defendants acted with intent to do harm to the Plaintiff, violating the rights of Mr. Sherman, without excuse or justification.

77. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

78. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Avroham Sherman has been substantially injured.

### AS AND FOR THE FIFTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### ALL NAMED DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-Violation of First Amendment Rights-**

79. Plaintiff incorporates by reference and realleges each and every allegation stated in paragraphs 1 through 78.

80. Defendants, acting in concert, arrested the Plaintiff.

81. Defendants deprived Plaintiff of his well-established rights to freedom of speech under the First Amendment to the United States Constitution, and to freedom from arrest without probable cause under the Fourth Amendment to the United States Constitution.

82. Defendants' actions were motivated by bad faith and malice, to retaliate for Mr. Sherman's express refusal to follow an unlawful order—i.e., to immediately leave a party at 9:45PM, in order to surrender a cell phone which officers knew, or had reason to know, was in his rightful custody.

83. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

84. As a direct and proximate result, Plaintiff Avroham Sherman was substantially injured.

### AS AND FOR THE SIXTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### ALL NAMED DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-Conspiracy to Violate Plaintiffs' Civil Rights-**

14

85. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 84.

86. Defendant police officers, as state actors in their individual capacities pursuing personal interests wholly separate and apart from that of the City of New York or New York City Police Department, conspired with the Complainant, and/or complaining officer, Defendant Joshua Eilenberg, reached a mutual understanding, and overtly acted in concert to undertake a course of conduct violative of the Plaintiff's constitutional rights.

   a. Defendants Hernandez and Eilenberg conspired together to threaten a phony criminal case to coerce Mr. Sherman into prematurely relinquishing Eilenberg's cell phone.  When Sherman failed to succumb to the threat, the two agreed to, and did, in fact, initiate the filing of a false police report against Sherman, in violation of his rights.

   b.  Defendants Carlyle Jean Joseph and Nyaca Stewart knew that Hernandez and Eilenberg had conspired together to concoct a phony criminal case to force Mr. Sherman into prematurely relinquishing Eilenberg's cell phone.  Yet seeking to protect Hernandez and/or Eilenberg from being found out, they agreed not to intervene, and effectively joined the conspiracy by arresting Mr. Sherman.

87. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

88. Defendants' actions were motivated by bad faith, malice, and/or willful indifference to the Plaintiff's rights.

89. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Avroham Sherman has been substantially injured.

15

## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST AND
## ALL NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Failure to Intercede-

90. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 89.

91. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials without the appropriate authorization.

92. The actions of Defendant officers detailed above violated the Plaintiff's rights under the United States Constitution.  It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

93. Defendants' actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of the Plaintiff.

94. This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

95. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been substantially injured.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST THE CITY OF NEW YORK

**- Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law-**

16

96. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 95.

97. Upon information and belief, NYPD supervisors "Doe," supervised, directed, and otherwise sanctioned the wrongful conduct of other Defendants Hernandez, Joseph, and John Doe officers.

98. Upon information and belief, Defendant City of New York and supervisors "Doe," were supervisors and final decision makers, and as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making false arrests, ignoring material evidence, and prosecuting innocent individuals.

99. In the alternative, and upon information and belief, Defendants instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice, and/or improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a willful indifference to the constitutional rights of the Plaintiff.  The policies, procedures, customs and practices of the Defendants violated the Constitutional rights of the Plaintiff under the Fourth Amendment of the United States Constitution.

100.       It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

101.     At all times relevant herein, the right to be free from deprivations of liberty

interests caused by unjustifiable criminal charges and procedures were clearly established

constitutional rights that a reasonable person would have known.

102.     Upon information and belief, over a span of years, the 66th Precinct has repeatedly

been mentioned as a site for police misconduct.

103.     In or about July of 2013, the Kings County District Attorney's Office announced

the formation of an unprecedented panel[3] of former prosecutors, professors, and retired

judges to review as many as 50 convictions involving a former Kings County detective,

Louis Scarella, who is alleged to have regularly sought false statements from witnesses,

and whose work appears to have sent an array of innocent citizens to prison.

104.     Long time Kings County District Attorney Charles Hynes was voted out of office

amidst widespread[4] allegations of misconduct.

105.     Upon information and belief, former Kings County Detective, Michael Race,

whose work has also been linked to the conviction of innocents, has been quoted in press[5]

accounts as stating that of the 750 murder investigations he ran, only one was "done the

correct way, A to Z."

---

[3] Panel Named to Review Trial Convictions Involving Retired Brooklyn Detective, July 2, 2013, Brooklyn Daily Eagle, available at http://www.brooklyneagle.com/articles/panel-named-review-trial-convictions-involving-retired-brooklyn-detective-2013-07-02-180000

[4] See e.g., Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misues of Funds, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.

[5] See e.g., In a 1992 Murder, Evidence of Flawed Justice, July 4, 2013, New York Times, available at http://www.nytimes.com/2013/07/05/nyregion/in-a-1992-murder-evidence-of-flawed-justice.html

106.     In 2011, some two-dozen Bronx-based NYPD officers were subject to criminal charges[6] involving allegations of "fixing" tickets for friends and relatives.

107.     Upon information and belief, in July of 2012, after discovering that many people arrested on charges of criminal trespass at Bronx County housing projects were innocent, even though police officers had provided written statements to the contrary, the Bronx district attorney's office quietly adopted a policy[7] of no longer prosecuting people who were stopped at public housing projects and arrested for trespassing, unless the arresting officer was interviewed to ensure that the arrest was warranted.

108.     On February 2, 2012, officers from the 47th Precinct in the Bronx wrongfully entered the home of 18 year old Ramarley Graham and shot the unarmed youth to death in his bathroom as he was allegedly trying to flush a small quantity of marijuana down the toilet.

109.     On June 27, 2011, former Bronx-based N.Y.P.D  police officer and later Sergeant William Eiseman pled guilty to one count of felony first-degree perjury and three counts of official misconduct stemming from allegations that he personally filed false instruments, intentionally testified falsely, and encouraged his subordinates to act in kind.

110.     Mayor Bill De Blasio ran his firstcampaign[8] in substantial part on the need for "much needed reforms," with the NYPD, calling for "new leadership," the appointment of an "inspector general," to oversee the NYPD, and the introduction of a "strong racial profiling bill."

---

[6] See Big Inquiry Into Ticket-Fixing in New York, New York Times, April 17, 2011, available at http://www.nytimes.com/2011/04/18/nyregion/ticket-fixing-by-police-investigated-in-new-york.html?_r=0&adxnnl=1&adxnnlx=1400166713-OIwMCI6A6jnLyJC00DdeoQ
[7] Prosecutor Deals Blow to Stop and Frisk Tactic, New York Times, September 25, 2012, available at http://www.nytimes.com/2012/09/26/nyregion/in-the-bronx-resistance-to-prosecuting-stop-and-frisk-arrests.html?pagewanted=all
[8] See Bill DeBlasio campaign website @ http://www.billdeblasio.com/issues/crime-fighting-public-safety

111.     The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a widespread legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

112.     Defendant(s) also, upon information and belief, demonstrated deliberate indifference to the rights of those arrested in the City of New York by failing to adequately hire, screen, train, and supervise officers in Kings County and the 60th Precinct.

113.     The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fourth, and Fourteenth Amendments of the United States Constitution.

114.     This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

115.     Upon information and belief, none of the Defendants named herein were disciplined in for their actions relative to the Plaintiff.

116.     As a direct and proximate result of the unconstitutional acts described above, Plaintiff Avroham Sherman has been substantially injured.


## STATE CLAIMS


117.     Notice of the Plaintiff's claim, the nature of the claim and the date of, the time when, the place where and the manner in which the claim arose was duly served upon the Comptroller of the City of New York on or about December 22, 2017.

20

118.     Mr. Sherman sat for a 50h hearing pursuant to his claim on June 11, 2018.

119.     More than 30 days have elapsed since the Notice of Claim was served upon the

Defendant City of New York and said defendant has neglected to initiate any settlements

thereof.

120.     This action is commenced within One Year and Ninety-Days after the cause of

action arose.

121.     At all times relevant to the state claims cited herein, Defendant officers were

acting in the scope of their employment, as agents of the City of New York.

### AS AND FOR THE NINTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### ALL NAMED DEFENDANTS

**-False Arrest/Imprisonment-**

122.     Plaintiff incorporates by reference and realleges each and every allegation stated

in Paragraphs 1 through 121.

123.     Defendants knowingly and deliberately had the Plaintiff arrested for serious

crimes that they had knowledge he did not commit.

124.     Defendant NYPD officers intentionally subdued, handcuffed, and confined the

Plaintiff, who was conscious, without consent or privilege.

125.      Defendant Joshua Eilenberg took an active role in the arrest of the Plaintiff by

encouraging Defendant Hernandez to threaten the Plaintiff with arrest if the cell phone

was not immediately returned, and then urging him to act on the threat by completing the

requisite paperwork for a felony prosecution to be commenced.  Hernandez expressed

reluctance to initiate the felony case against the Plaintiff, both in his initial suggestion

21

that the case might go away if the Plaintiff brought the phone back immediately, and in his statement, "If I *have to* do this police report that you stole this cell phone, detectives will be coming after your house…".  Accordingly, Eilenberg, did not merely report a crime to the police and participate in the prosecution, but he *actively* importuned the police to make an arrest without reasonable cause to believe the Plaintiff was guilty.

126.     Defendant Joshua Eilenberg and/or Defendant Hernandez also took an active role in the arrest of the Plaintiff by continuing to reassure Defendants Jean Joseph and Stewart that his false allegations against the Plaintiff were true, and urging them to move forward with the Plaintiff's arrest when they were plainly uncertain of Eilenberg's veracity, as evidenced by the multiple phone calls they made before finally arresting the Plaintiff. Defendant Eilenberg was also the source of information that Jean Joseph cited in his supporting deposition of Plaintiff's criminal Complaint, which charged the Plaintiff , *inter alia*, with Fourth Degree Grand Larceny, an E felony.

127.     Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of the Plaintiff and were in no way supported by probable cause.

128.     As a direct and proximate result of the unconscionable acts described above, the Plaintiff has been substantially injured.


**AS AND FOR THE TENTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF AGAINST**
**AGAINST**
**ALL NAMED DEFENDANTS**

**-Malicious Prosecution-**

129.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 128.

130.     Defendants each knowingly and intentionally commenced or continued a criminal

proceeding against the Plaintiff.

132.     The charges against the Plaintiff were summarily dismissed.

133.     Defendants' actions were motivated by bad faith, malice, and/or deliberate

indifference to the rights of the Plaintiff.

134.     Defendant Joshua Eilenberg took an active role in the prosecution of the Plaintiff

by encouraging Defendant Hernandez to threaten the Plaintiff with arrest if the cell phone

was not immediately returned, and then urging him to act on the threat by completing the

requisite paperwork for a felony prosecution to be initiated.  Hernandez expressed

reluctance to initiate the felony case against the Plaintiff, both in his initial suggestion

that the case might go away if the Plaintiff brought the phone back immediately, and in

his statement, "If I *have to* do this police report that you stole this cell phone, detectives

will be coming after your house…".  Accordingly, Eilenberg, did not merely report a

crime to the police and participate in the prosecution, but he actively importuned the

police to initiate a prosecution based on allegations that he knew to be false.

135.     Defendant Joshua Eilenberg and/or Defendant Hernandez also took an active role

in the prosecution of the Plaintiff by continuing to reassure Defendants Jean Joseph and

Stewart that his false allegations against the Plaintiff were true, and urging them to move

forward with the Plaintiff's arrest when they were plainly uncertain of Eilenberg's

veracity, as evidenced by the multiple phone calls they made before finally arresting the

Plaintiff.  Defendant Eilenberg was also the source of information that Jean Joseph cited

in his supporting deposition of Plaintiff's criminal complaint, initiating the prosecution,

and charging the Plaintiff , *inter alia*, with Fourth Degree Grand Larceny, an E felony.

136.     As a direct and proximate result of the unconscionable acts described above, the

Plaintiff has been substantially injured.


**AS AND FOR THE ELEVENTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF AGAINST
JOSHUA EILENBERG**

**-Defamation Per Se-**

137.     Plaintiff incorporates by reference and realleges each and every allegation[9] stated

in Paragraphs 1 through 136.

138.     On October 6, 2017, at approximately 9:43PM, inside the 66th Precinct, located

at 5822 16th Ave, Brooklyn, NY 11204, Defendant Joshua Eilenberg falsely alleged to

N.Y.P.D. police officer Antonio Hernandez that Avroham Sherman "took my iphone 7,"

and specifically, that Avroham Sherman "stole it."

139.     Eilenberg made these statements, knowing they were false, while pursuing a

criminal complaint and prosecution against the Plaintiff.

140.     Eilenberg's statement was motivated by malice, as it was a knowingly false

statement made in retaliation against the Plaintiff for refusing to return a phone that

Eilenberg had voluntarily surrendered as collateral for an unpaid loan.

141.     Defendant Eilenberg's false statement was published,[10] without privilege or

authorization, to a substantial number of third parties, including Defendant Officers

---

[9] Defendant Hernandez directly referenced a "report" which Defendant Eilenberg was poised to complete (see ¶¶7, 32).  Defendants are on notice that Plaintiff intends to amend the complaint to incorporate this report into his defamation claim when it becomes available through discovery.

[10] "Publication" refers not only to written comments, but to any "communication" to some third person who understands the defamatory meaning of the statement and its application to the person to whom the reference is made." Condit v. Dunne, 317 F. Supp. 2d 344, 2004 U.S. Dist. LEXIS 7247, 33 Media L. Rep. 1289 (S.D.N.Y. April 27, 2004) (citing, Smith v. Maldonado, 72 Cal. App. 4th 637, 85 Cal. Rptr. 2d 397, 402 (Ct. App. 1999).

Hernandez, Jean Joseph and Stewart, and members of the Kings County District

Attorney's Office, resulting in Mr. Sherman's arrest and prosecution.

142.      Defendant Eilenberg effectively stated that the Plaintiff committed serious crimes,

including Grand Larceny in the Fourth Degree (an E felony).  These statements likewise

tended to injure the Plaintiff in his trade, business or profession.

143.      As a direct and proximate result of the unconscionable acts described above, the

Plaintiff has been substantially injured.


### AS AND FOR THE TWELFTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF AGAINST
### JOSHUA EILENBERG

**-Intentional Infliction of Emotional Distress-**

144.      Plaintiff incorporates by reference and realleges each and every allegation stated

in Paragraphs 1 through 143.

145.      At all times mentioned herein, Defendants' conduct was intentional, extreme and

outrageous.

146.      As set forth herein, as a direct result of Defendant Eilenberg's false report to

police, Mr. Sherman (who had no prior arrest record) was arrested and taken to central

booking where he suffered severe emotional distress as he was made to wait through the

night, under horrifying conditions, to see a judge.

147.      These conditions included being caged with 15-20 other arrestees in a cell with

urine on the floor and feces on the wall, being exposed to a man masturbating at the

toilet, being sleep-deprived, being denied Kosher food, and being physically threatened

to the point that Sherman felt compelled to spend the majority of his confinement standing at the gate nearest the guard for fear of being assaulted or worse.

148.    Mr. Sherman was charged with Grand Larceny in the Fourth Degree (an E felony), Petit Larceny, and Criminal Possession of Stolen Property in the Fifth Degree.

149.    In a subsequent recorded phone call to Mr. Sherman, Joshua Eilenberg admitted that he had made a "big mistake" regarding his conduct which led to Mr. Sherman's arrest.  He professed his love for Mr. Sherman through tears, acknowledging the severe distress his actions had inflicted on Mr. Sherman, and promising to pay Mr. Sherman whatever it took to make up for the "agony" and "pain" Mr. Sherman had suffered.

150.    As a direct and proximate result of the unconscionable acts described above, the Plaintiff suffered severe emotional distress.

## AS AND FOR THE THIRTEENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## JOSHUA EILENBERG

### -Negligent Infliction of Emotional Distress-

151.    Plaintiff incorporates by reference and reallege each and every allegation stated in Paragraphs 1 through 150.

152.    As a direct and proximate result of the Defendants' outrageous departure from accepted standards of care, Plaintiff was caused to suffer severe emotional distress.

## AS AND FOR THE FOURTEENTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## ALL NAMED NYPD DEFENDANTS

### -Negligence-

153.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 152.

154.     At all relevant times, Defendants owed Mr. Sherman a common law duty to use reasonable care in carrying out the business of the New York City Police Department, so as to avoid the foreseeable risk of injury to citizens.

155.     Defendants breached their duty of reasonable care to the Plaintiff in failing to act reasonably, and/or failing to adequately abide by the NYPD's own published policies and procedures, as described herein.

156.     Had Defendants acted reasonably, and/or followed their own published policies and procedures, the Plaintiff would not have incurred the damages set forth herein.

157.     The injuries to the Plaintiff were due wholly and solely to the negligence of the Defendants, and without any comparative negligence contributing thereto.

158.     Defendants' negligence was the direct and proximate cause of the Plaintiff's injuries.

159.     As a result of the aforedescribed, the Plaintiff has been substantially injured.


**AS AND FOR THE FIFTEENTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFF AGAINST
DEFENDANTS CITY OF NEW YORK AND NYPD DEFENDANTS**

**-Negligent Hiring, Retention, and Supervision-**

160.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 159.

161.     Upon information and belief, Defendants City of New York., and/or NYPD supervisors John/Jane Doe #1-10, were directly responsible for hiring and/or training and/or supervising and/or retaining Defendants Hernandez, Joseph, and Doe.

162.     Upon information and belief, Defendants City of New York., and/or NYPD supervisors John/Jane Doe #1-10, were supervisor(s) and final decision maker(s), and acted with a gross and callous recklessness, negligence and deliberate indifference to the Plaintiff's rights, in that they failed to adequately hire, screen, discipline, train, supervise or otherwise direct NYPD employees concerning the rights of citizens, including by not following reasonable standards of care, not falsely accusing citizens of crimes, not ignoring and/or dismissing exculpatory evidence, and not falsely arresting and imprisoning them.

163.     At all relevant times, the malicious and intentional wrongdoing of Defendants, as set forth herein, involved one or more supervisors, acting in the course of their employment, ordering, participating in, and/or ratifying the NYPD employees' outrageous conduct.

164.     As a direct and proximate result of the despicable acts described above, the Plaintiff has been substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

165.     The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

166.        The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Avroham Sherman requests that this Honorable Court grant him the following relief:

A.  A judgment in favor of Plaintiff against all Defendants for compensatory damages in an amount to be determined by a properly charged jury.

B.  A judgment in favor of Plaintiff against all Defendants but the City of New York for punitive damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York                Respectfully Submitted By:
             November 29, 2018


_____/s_____
Andrew L. Hoffman, Esq. (AH9502)
Law Office of Andrew L. Hoffman, P.C.
*Attorneys for the Plaintiff*
261 Madison Avenue, 12 Floor
New York, NY 10016
T: (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com

## <u>ATTORNEY'S VERIFICATION</u>

STATE OF NEW YORK )

                  SS.:

COUNTY OF NEW YORK)

      I, the undersigned, am an attorney admitted to practice in the Courts of the State of New York, say that:

      I am associated with the attorney of record for the Plaintiff, The Law Office of Andrew L. Hoffman, PC, 261 Madison Avenue, 12th FL, New York, New York 10016.

      I have read the foregoing Verified Complaint and knows the contents thereof; that and the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and, as to those matters I believe them to be true.

      My belief as to those matters therein not stated upon knowledge is based on investigation, correspondence, conferences and all facts, data, information, reports, statements, etc. in our file pertaining to this matter.

      The reason I make this Affirmation instead of the Plaintiff is that the Plaintiff is not within the county where Affirmant maintains his office.

      I affirm that the foregoing statements are true under penalties of perjury.

Dated:      New York, New York
           November 29, 2018


                         _____/s_____
                             Andrew L. Hoffman, Esq.